IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RASUL FREELAIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 6592 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| VILLAGE OF OAK PARK; CHIEF OF | ) | |
| POLICE ANTHONY AMBROSE; and | ) | |
| UNKNOWN VILLAGE OFFICIALS AND | ) | |
| POLICE DEPARTMENT COMMAND STAFF, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rasul Freelain has brought a nine-count complaint against the Village of Oak Park ("the Village"), Chief of Police Anthony Ambrose, and Unknown Village Officials and Police Department Command Staff ("defendants") alleging violations of Title VII, 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201 et seq., and the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1, et seq. Defendants have moved to dismiss Counts II through VI and Count IX[1] for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, defendants' motion is granted in part and denied in part.

---

[1] Counts I, II, VI, and IX are pled against the Village, Counts III and IV are pled against Chief Ambrose, and Count V is pled against Unknown Village Officials and Police Department Command Staff.

# BACKGROUND[2]

Plaintiff worked for the Village as a patrol officer and detective in the Oak Park Police Department ("OPPD") from 2002 until he was terminated in 2017. According to plaintiff, he was terminated in retaliation for reporting that OPPD Sergeant Dina Vardal sexually harassed and battered him, and for speaking out about misconduct within the OPPD. Plaintiff claims that the OPPD then investigated his conduct twice, both for retaliatory reasons, because he filed a lawsuit against the Village and Sergeant Vardal alleging FMLA interference, ADA discrimination and retaliation, and assault and battery in violation of the Illinois Gender Violence Act ("IGVA").[3] One investigation involved plaintiff's arrest of a domestic battery suspect who alleged excessive force and malicious prosecution. According to plaintiff, that lawsuit, which resulted in a jury verdict for the man arrested, was filed October 24, 2014, but the investigation into plaintiff's conduct did not commence until June 28, 2016.[4] Plaintiff was interrogated regarding the arrest on July 21, 2016. Plaintiff claims that the Village was "apparently unhappy with the results of the interrogation," although he does not say why, and opened a second investigation into plaintiff's conduct, this time alleging that he accessed a criminal history database without authorization. Plaintiff was interrogated regarding that investigation on August 17, 2016, and claims to have

---

[2] The facts in this background section are taken from allegations of the complaint, which are presumed true for purposes of resolving defendants' motion to dismiss. Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011).

[3] That lawsuit was brought before Judge Manish Shah and alleged many of the acts alleged in the instant case. See 13-C-3682. Judge Shah granted defendants' motion for summary judgment, largely due to the fact that plaintiff was still employed and was unable to show that any adverse employment action had been taken. That ruling is currently on appeal before the Seventh Circuit. See id. at Doc. 163.

[4] Although plaintiff suggests that this delay is evidence of defendants' retaliatory intent, the court notes that plaintiff filed his lawsuit against the Village and Vardal more than a year prior to the excessive force and malicious prosecution lawsuit being filed.

heard nothing from the Village until November 21, 2016, in violation of the terms of the Collective Bargaining Agreement ("CBA") between the Village and the Fraternal Order of Police, which represented plaintiff.  November 21, 2016, was exactly 18 days after plaintiff lost the lawsuit he brought against the Village and Vardal, largely because the court found that plaintiff could not show any adverse employment action.

According to plaintiff, when Chief Ambrose presented the Village's findings regarding the investigations into his conduct they included a number of new charges, of which plaintiff had not been notified, and which plaintiff claims were false.  After presenting the findings, Chief Ambrose conducted a "Due Process Pre-Disciplinary Interview" with plaintiff.  Plaintiff claims that Chief Ambrose refused to answer plaintiff's questions or explain his findings during that interview.  Chief Ambrose terminated Plaintiff on May 26, 2017, for reasons plaintiff alleges were pretextual. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 14, 2017, and received notice of his right to sue the following day.  Plaintiff had a post-termination meeting with Chief Ambrose on July 14, 2017, which plaintiff characterizes as a "cross-examination."  Chief Ambrose allegedly issued another explanation of his reasons for terminating plaintiff after that meeting.  Plaintiff had another post-termination meeting, this time with Village Manager Cara Pavlicek, on August 24, 2016.  According to plaintiff, the Village again refused to answer any of his questions and instead used the meeting as an opportunity to "cross-examine" plaintiff.  Plaintiff claims that the Village still refuses to fairly consider his response to the charges.

**DISCUSSION**

**I.     Standard of Review**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When ruling on a motion to dismiss pursuant to 12(b)(1) and (6), the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). This standard demands that a complaint allege more than legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**II.    Analysis**

   **A.    Count II: Illinois Whistleblower Act**

In Count II plaintiff claims that he was fired in retaliation for reporting violations of state and federal law, in violation of the IWA. According to defendants, this claim should be dismissed for three reasons: (1) no private right of action exists for one of the sections (§ 20.2) of the IWA that defendant claims plaintiff alleges the Village violated; (2) plaintiff's claim is preempted by the Illinois Human Rights Act ("IHRA"); and (3) plaintiff's claim fails absent an allegation that he reported the violations to a government official. Defendants add that Count II should be

dismissed because plaintiff has failed to allege that he was retaliated against for a report protected by the IWA. The court need not address the first argument because plaintiff concedes it in his response brief, and clarifies that his claim is rooted only in Section 15 of the IWA.

Defendants next argue that plaintiff's IWA claim is preempted by the IHRA because it is inextricably linked to his allegation of sexual harassment and retaliation. The IHRA provides that, "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set for the in this Act." 775 ILCS 5/8-111(D). The IHRA specifically bans sexual harassment in employment as a "civil rights violation." 775 ILCS 5/2-102(D). Accordingly, if plaintiff bases his IWA claim only on his alleged report of sexual harassment, it would be preempted. Plaintiff does not. He also alleges that he was retaliated against for reporting a "felony and misdemeanor battery." Such conduct, even when it "arises in the employment context might still form the basis for a sustainable common-law tort under Illinois law." Richards v. U.S. Steel, 869 F.3d 557, 563 (7th Cir. 2017). "To draw the line between preemption versus not, the Illinois Supreme Court has boiled down the inquiry as follows: whether a court 'may exercise jurisdiction over a tort claim depends on whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself.'" Id. at 564 (quoting Maksimovic v. Tsogalis, 177 Ill. 2d 511, 518, 687 N.E.2d 21, 24 (1997)). A battery claim is not inextricably linked with a sexual harassment violation "where a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the [IHRA]." Maksimovic, 687 N.E.2d at 24. Because plaintiff alleges a battery claim independent of his sexual harassment claim, and alleges retaliation for reporting the alleged battery, his IWA claim is not preempted.

5

Defendants' argument that plaintiff's IWA claim should be dismissed because he reported Sergeant Vardal's alleged abuse internally also fails. The IWA provides:

> An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

740 ILCS 174/15(b).

Defendants are correct that both Illinois and Northern District of Illinois courts have generally held that internal reporting cannot form the basis of an IWA claim, but that analysis changes when the employer is itself a government or law enforcement agency. An employee who reports alleged misconduct to his government or law enforcement agency employer satisfies the IWA because "'the statute requires an employee only to report to a government or law-enforcement agency, and no exclusions apply if a government or law-enforcement agency is also the employer.'" Milsap v. City of Chicago, 2018 WL 488270, at *9 (N.D. Ill. Jan. 19, 2018) (quoting Brame v. City of North Chicago, 955 N.E.2d 1269, 1272–73 (Ill. App. Ct. 2011)). Defendants attempt to distinguish Brame by noting that the plaintiff in Brame reported alleged misconduct directly to the Mayor, not the city's human resources department. The Brame Court did indeed note this fact, but nothing about its holding suggests that it should be construed so narrowly. To the contrary, it appears to have been intended to apply broadly to all police officers: "It is difficult to perceive that the legislature did not intend the Act to protect a police officer from retaliation for reporting the illegal conduct of fellow officers to his superiors in the department." Brame, 955 N.E.2d at 1273. Plaintiff alleges that he reported what he perceived to be illegal conduct, a "felony and misdemeanor battery," by Sergeant Vardal to the Village's Human Resources Department and the Cook County State's Attorney. He further alleges that he was

6

retaliated against as a result. Because these allegations are sufficient to state a claim under Section 15(b) of the IWA, defendants' motion to dismiss Count II is denied.

## B. Count III: First Amendment Retaliation

In Count III plaintiff alleges retaliation in violation of the First Amendment. Defendants argue that plaintiff's speech did not address matters of public concern and was therefore not protected.[5] To state a claim for First Amendment retaliation public employees must show that their speech was constitutionally protected. Kubiak v. City of Chicago, 810 F.3d 476, 481 (7th Cir. 2016). For such speech to be protected, "the employee must establish that she spoke as a citizen on a matter of public concern."[6] Id. Whether this threshold is met is a question of law. Id.

A matter is of public concern when it is a "legitimate news interest or a subject of general interest and of value and concern to the public at the time of publication." Id. at 482 (internal quotation marks omitted). The court must look to "the content, form, and context of a given statement" and ascertain the "overall objective or point of the speech" to determine whether it addresses a matter of public concern. Id. at 482–83. Content is the most important of the three factors, but the subject matter is not determinative. Id. at 483. The court must "focus on the particular content (as opposed to the subject matter) of the speech." Id. (internal quotation marks omitted). The speaker's motive is also relevant to the context inquiry, but is not dispositive. Id.

---

[5] Defendants also argue that in paragraphs 55, 57 and 59 of his complaint plaintiff asserts that speech made to command staff was protected. Plaintiff does not respond to this argument in his response brief and the court does not read those paragraphs to assert such a claim, so the court will not address whether such speech, if made, would have been protected.

[6] Because defendants do not, and cannot, argue that deposition testimony plaintiff gave during his 2013 lawsuit was given pursuant to his official duties, the court assumes plaintiff was speaking as a citizen and will focus its inquiry on whether the speech involved a matter of public concern.

"In sum, we ask whether the objective of the speech–as determined by content, form, and context–was to bring wrongdoing to light or to further some purely private interest." Id. (internal quotation marks omitted). In this case, the answer to that question is the latter.

Starting with context, plaintiff is correct that his deposition testimony is not deemed to further a purely private interest simply because it occurred during a private lawsuit. See Zorzi v. County of Putnam, 30 F.3d 885, 897 (7th Cir. 1994) ("the mere fact that [a plaintiff's] statement is an outgrowth of his personal dispute does not prevent some aspect of it from touching upon matters of public concern") (internal quotation marks omitted). Additionally, that plaintiff "had a personal motive for filing th[e] suit and sought remedies of a personal nature . . . does not prevent the lawsuit from being a matter of public concern." Id. Indeed, all discrimination is, to some extent, a matter of public concern, but it does not follow that every lawsuit alleging discrimination raises matters of public concern, particularly in "the absence of any attempt by [the plaintiff] to distinguish th[e] case from the run-of-the-mine single-plaintiff discrimination case." Yatvin v. Madison Metro. Sch. Dist., 840 F.2d 412, 420 (7th Cir. 1988). According to plaintiff, his 2013 lawsuit alleged ADA discrimination and retaliation, and FMLA interference and retaliation against the Village, and assault and battery, and violation of the IGVA against Vardal. What plaintiff describes is a run-of-the-mine single plaintiff discrimination case.

Plaintiff also claims that his 2013 lawsuit "exposed a range of misconduct" in the OPPD, although he does not specify what misconduct. According to plaintiff, he exposed inconsistencies between officers' accounts of the OPPD's response to Vardal's alleged battery, and revealed that he attempted to issue a memo to the Chief of Police regarding a high-profile murder case, but was forced to give the memo to the Deputy Chief instead because the Chief was "tired of plaintiff."

Even if the court were to assume that these allegations rise to the level of police misconduct, speech involving misconduct of police officers is not automatically considered a matter of public concern. Kubiak, 810 F.3d at 483. The court must look to the particular content of the speech, not just the broad subject matter, to determine whether it involves matters of public concern. Looking to the particular content that plaintiff alleges, the court concludes that plaintiff's speech was not a matter of public concern because it was made to advance the purely private interest of prevailing on his discrimination and retaliation claims, not as "part of an overall effort to correct allegedly unlawful practices or to bring them to public attention." Yatvin, 840 F.2d at 418.

Plaintiff's argument that his speech related to his 2013 lawsuit was a matter of public concern relies heavily on two things: (1) the Wednesday Journal of Oak Park and River Forest featured multiple articles regarding allegations he made in court filings; and (2) Zorzi. Plaintiff's reliance is misplaced for a number of reasons. First, the plaintiff in Zorzi alleged that she was fired from her job as a dispatcher for the Sheriff's Office because she publicly supported the State's Attorney who was critical of the Sheriff. Zorzi, 30 F.3d at 888–89. The court found that *political speech* is a matter of public concern because "had Zorzi not filed this suit, the market-place of ideas could very well have been constricted by discouraging other employees from engaging in political speech." Id. at 898. Second, the plaintiff in Zorzi alleged that the State's Attorney was critical of the Sheriff because "he: allowed a convicted child molester to joyride with troopers; failed to serve court orders when advised to do so by a judge; failed to preserve evidence; failed to keep prisoners secured in their cells; did business with prisoners; and allowed prisoners to run up phone bills at the expense of the County." Id. at 896. The court found that this alleged misfeasance went directly to police protection and public safety, which are

9

matters of great public concern. Id. Third, while the Zorzi Court acknowledged that "numerous news stories cover[ing] the lawsuit" suggested that it was a matter of public concern, it did so cautiously:

> It is important not to equate the public's curiosity about a matter with the matter having societal ramifications. People may be interested in any number of aspects of the lives of public officials and employees, but that does not mean that such matter[s] have societal ramifications. Conversely, the public may be extremely apathetic about certain matters of public concern.

Id. at 897 n. 11 (internal quotation marks and alterations omitted).

Nothing about plaintiff's allegations in his 2013 lawsuit suggests that any of them would undermine police protection or public safety, or have societal ramifications. In sum, looking at the content, form, and context of plaintiff's speech, the court concludes that it did not address a matter of public concern, but rather the purely private concern of prevailing in his 2013 lawsuit. Accordingly, his First Amendment Retaliation claim in Count III is dismissed.

### C. Count IV: Due Process

In Count IV, which names only Chief Ambrose, plaintiff alleges that he was fired in violation of due process. Defendants do not dispute that plaintiff had a protected property interest in his continued employment with the OPPD, but argue that the claim should be dismissed because it relates to plaintiff's pre-termination procedures, which are adequate in light of the Village's post-termination procedures. Additionally, defendants argue that the CBA between plaintiff and the Village provides extensive pre-termination procedures consistent with the Illinois Uniform Peace Officers' Disciplinary Act ("IUPODA") (50 ILCS 725/1 et seq.). According to defendants, because plaintiff alleges that Chief Ambrose violated the procedures set forth in the CBA, not that

adequate pre-termination procedures did not exist, any violations were "random and unauthorized," making pre-termination hearings impractical.

As an initial matter, plaintiff does not allege inadequate pre- or post-termination procedures. In fact, plaintiff's complaint makes no mention whatever of the termination procedures provided for in the CBA or the IUPODA. Instead, plaintiff alleges that Chief Ambrose committed "text book due process violations" by relying on new charges in his termination letter without giving plaintiff an opportunity to respond, deliberately misinterpreting rules to terminate plaintiff, and refusing to act as an impartial decision maker. Additionally, plaintiff does not challenge the adequacy of any post-termination procedures aside from characterizing two post-termination meetings as "a vehicle for cross examination."[7] Because it is undisputed that plaintiff had a protected property interest in his continued employment with the OPPD, and plaintiff does not allege inadequate post-termination procedures, the court will focus on the procedural protections that he was due before he was fired.

Due process requires a pre-termination hearing for an employee with a protected property interest in his employment, but "the scope of the right to a pretermination hearing is dependent upon the adequacy of post-termination remedies." Michalowicz v. Vill. of Bedford Park, 528 F.3d 530, 536 (7th Cir. 2008). Plaintiff does not allege that his post-termination remedies are inadequate, and the court assumes that they are not. Consequently, "pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story." Id. at 537 (internal quotation marks

---

[7] In his response brief, plaintiff appears to concede that he is pursuing post-termination arbitration and, again, does not challenge the Village's post-termination procedures. See Doc. 19 at 8–9.

11

omitted). Plaintiff alleges that he was denied all but notice of the charges,[8] but "the relevant constitutional question is whether sufficient state-law protections *exist*, not whether sufficient protections were *afforded*." Id. at 534 (emphasis supplied). Accordingly, "a complaint does not state a valid procedural due process objection if it does not include a challenge to the fundamental fairness of state procedures." Id. (internal quotation marks and alterations omitted). Plaintiff's complaint fails to meet this requirement. Instead, plaintiff alleges that Chief Ambrose "flouted" due process and disregarded the provisions of the CBA. In doing so, plaintiff challenges Ambrose's failure to follow existing procedures, not the constitutionality of the procedures themselves. "This species of due-process claim is a challenge to the 'random and unauthorized' actions of [Ambrose], i.e., to [his] unforeseeable misconduct in failing to follow the requirements of existing law." Id. at 535. "Because such misconduct is inherently unpredictable, the state's obligation under the Due Process Clause is to provide sufficient remedies after its occurrence, rather than to prevent it from happening." Id. Again, plaintiff does not challenge his post-termination procedures. Because plaintiff alleges that Ambrose willfully ignored procedures in place, not the procedures themselves, he fails to state a due process claim:

> Section 1983 must be preserved to remedy only those deprivations which actually occur without adequate due process of law, such as those which result from a *state's* conscious decision to ignore the protections guaranteed by the Constitution. It should not be employed to remedy deprivations which occur at the hands of a state employee who is acting in direct contravention of the state's established policies and procedures which have been designed to guarantee the very protections which the *employee* now has chosen to ignore.

Easter House v. Felder, 910 F.2d 1387, 1404 (7th Cir. 1990) (emphasis supplied).

---

[8] The court notes that plaintiff also alleges that "The Village has yet to fairly consider the facts of this case or Plaintiff's response to Chief Ambrose's charges," Doc. 1 at ¶ 158, suggesting that he has, in fact, been given the opportunity to tell his side of the story.

Plaintiff argues that the above reasoning does not apply because "Ambrose had every opportunity to afford Plaintiff a fair hearing." That is precisely the point. Ambrose could have, and should have, conducted a hearing according to established procedures. According to the complaint, he did not. Instead, Ambrose allegedly acted in direct contravention of the procedures which were designed to guarantee the protections he ignored, i.e., his conduct was "random and unauthorized in the sense that the state could not predict the conduct causing the deprivation, could not provide a predeprivation hearing as a practical matter, and did not enable the deprivation through established state procedures and a broad delegation of power." Armstrong v. Daily, 786 F.3d 529, 544 (7th Cir. 2015) (internal quotation marks omitted). In such a situation, "the state is only responsible for providing postdeprivation remedies." Id. (internal quotation marks omitted). Because plaintiff does not challenge his postdeprivation remedies, he fails to state a Section 1983 claim. Count IV is dismissed.

### D. Count V: Conspiracy

In Count V plaintiff alleges a Section 1983 conspiracy claim that names only "Unknown Village Officials and Police Department Command Staff." According to plaintiff, "Unknown Village Officials and Police Department Command Staff" conspired with Chief Ambrose to retaliate against plaintiff and terminate him. According to defendants, the claim should be dismissed for two reasons: (1) it fails to identify the alleged conspirators; and (2) the intracorporate conspiracy doctrine precludes the claim. The court need address only the second argument.

The intracorporate conspiracy doctrine provides that "managers of a corporation jointly pursuing its lawful business do not become conspirators when acts within the scope of their employment are said to be discriminatory or retaliatory." Wright v. Ill. Dept. of Children &

13

Family Servs., 40 F.3d 1492, 1508 (7th Cir. 1994) (internal quotation marks omitted). The doctrine applies to municipal corporations. Spalding v. City of Chicago, 24 F. Supp. 3d 765, 779 (N.D. Ill. 2014). The court assumes the doctrine also applies to Section 1983 claims. See id. There are, however, "two recognized exceptions to the intra-corporate conspiracy doctrine: (1) where corporate employees are shown to have been motivated solely by personal bias; and (2) where the conspiracy was part of some broader discriminatory pattern or permeated the ranks of the organization's employees." Id. (internal quotation marks and alterations omitted).

As an initial matter, aside from the paragraphs that describe plaintiff's conspiracy claim, the actions of "unknown police department command staff" are mentioned exactly zero times in plaintiff's complaint and the actions of "unknown village officials" are mentioned only once, in paragraph 120: "Upon information and belief, someone in the Village administration accessed I-CLEAR themselves to search Plaintiff's history of I-CLEAR queries." Plaintiff further alleges, in the following paragraph, that the search was conducted "for the sole purpose of inventing pretext for his termination."[9] Aside from summarily concluding that these unnamed individuals conspired with Chief Ambrose to retaliate against plaintiff and reciting the conditions which establish the two exceptions to the intracorporate conspiracy doctrine in paragraphs 178 through 180, the complaint is almost completely devoid of their mention. This dearth of facts cannot establish that anyone, named or not, was motivated solely by personal bias, or performed acts that were part of a broader discriminatory pattern. Plaintiff's argument that the intracorporate

---

[9] Count IX summarily asserts that "the Village and Oak Park Police command staff maintained at all relevant times a widespread practice of retaliating and/or pursuing arbitrary discipline against employees who spoke out regarding misconduct or other matters of public concern." See Doc. 1 at ¶ 93. Count VI summarily asserts that "unknown Village Officials and Police Department Command Staff" violated plaintiff's First Amendment and due process rights. Id. at ¶ 184. There are no facts alleged in the complaint that support these conclusions.

14

conspiracy doctrine does not apply supports this finding by listing a number of allegations in the complaint that name either the Village itself, which is a defendant in this case, Chief Ambrose, also a defendant, or other *named* Village and OPPD personnel, who are not defendants.

Instead of pleading facts that could allow the court to draw the reasonable inference that unknown officials are liable for any misconduct, plaintiff summarily asserts that this is so. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim. Iqbal, 556 U.S. at 678. Accordingly, the intracorporate conspiracy doctrine applies, and plaintiff's conspiracy claim in Count V fails.

### E. Count VI: Indemnification

Count VI of the complaint seeks indemnification from the Village for any judgment against Chief Ambrose or the "Unknown Officials." Defendants argued in their motion to dismiss, without citing any authority, that plaintiff cannot seek indemnification under Illinois law. Defendants abandoned this argument in their reply brief. In any event, the "Unknown Officials" were named only in Count V, which is dismissed. Plaintiff may, however, seek indemnification for any judgment against Chief Ambrose. See Holliman v. Cook County, 2016 WL 4678312, at *3 (N.D. Ill. Sept. 6, 2016) ("A local public entity's obligation to indemnify an employee for actions taken in his official capacity stems from 745 ILCS 10/9-102."). Defendants' motion to dismiss Count VI is denied.

### F. Count IX: Monell

Count IX seeks to hold the Village liable for allowing Village officials, including Chief Ambrose, to violate Village employees' First Amendment and due process rights under Monell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978), which holds that public

entities may be held liable under § 1983 for constitutional deprivations pursuant to governmental custom. Because, as discussed above, plaintiff has failed to state a First Amendment or due process claim, Count IX is dismissed.

### G. Res Judicata

Defendants argue that many of plaintiff's claims are barred by the doctrine of res judicata because the court determined in the 2013 case that many of the acts plaintiffs complain of were not adverse employment actions. The court did so find, and, as discussed earlier, Judge Shah granted defendants' motion for summary judgment due largely to the fact that plaintiff could not show an adverse employment action. See 13-C-3682, Doc. 154. Plaintiff counters that he does not seek to litigate whether previously alleged acts were adverse employment actions, but rather provides them for context to his subsequent termination, which is, of course, an adverse employment action. See Chaudhry v. Nucor Steel-Indiana, 546 F.3d 832, 838 (7th Cir. 2008) (A materially adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.") (internal quotation marks omitted). The court agrees. Plaintiff need not allege, and this court need not find, that any acts prior to plaintiff's termination were adverse, but they are useful for context. In fact, according to defendants' logic, this court would be forced to decide the case essentially in a vacuum, with no details as to the events leading up to plaintiff's termination. That simply cannot be so. Those of plaintiff's claims that have not been dismissed are not barred by res judicata.

### H. Remedies

Defendants' final argument is that the following requested remedies are improper and should be stricken: a demand for injunctive relief prohibiting the Village from retaliation; ordering expungement of retaliatory charges and discipline from plaintiff's personnel file, and monitoring working conditions within the OPPD for at least five years. Plaintiff counters that the relief he seeks is proper because Section 1983 authorizes broad injunctive relief. Defendants, again, abandon this argument in their reply brief. Regardless, for the reasons discussed above, plaintiff does not state a claim under Section 1983, and the court will defer any decision concerning injunctive relief to an appropriate time.

### CONCLUSION

For the foregoing reasons, Counts III, IV, V, and IX are dismissed. Defendants are directed to answer the remaining claims on or before May 2, 2018. The parties are directed to file a joint status report using this court's form on or before May 9, 2018. This matter is set for a report on status on May 16, 2018, at 9:10 a.m.

**ENTER:** April 5, 2018

_____
**Robert W. Gettleman
United States District Judge**